# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ELAINE BUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-6084 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| WALMART, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Elaine Butler ("Plaintiff") brings suit against Defendant Walmart Inc. ("Defendant" or "Walmart") for negligence arising out of a fall she took in one of Defendant's parking lots. Currently before the Court is Defendant's motion for summary judgment [73]. For the following reasons, Defendant's motion [73] is denied. This case is set for telephone status hearing on July 27, 2021 at 9:45 a.m. Participants should use the Court's toll-free, call-in number 877-336-1829, passcode 6963747.

## I.   Background

The following facts are taken from the parties' Local Rule 56.1 statements and supporting exhibits. See [40], [43], [45]. The facts are undisputed unless otherwise indicated. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Plaintiff is a resident of Illinois, while Defendant is a Delaware corporation with its principal place of business in Bentonville, Arkansas. The amount in controversy exceeds $75,000. Venue is proper in this district because a substantial part of the events giving rise to Plaintiff's complaint occurred within this judicial district.

In her governing complaint, Plaintiff alleges that on August 3, 2017, she went shopping at a Walmart store located at 475 IL-173 in Antioch, Illinois. Plaintiff was shopping with her

daughter, Peggy Butler.  At the time of the relevant events, Plaintiff was using a cane to assist her in walking.  Plaintiff testified at her deposition that she used the cane because it made her feel safer, not because any doctor had proscribed its use.  Peggy testified at her deposition that Plaintiff used the cane because she had a blister on her left foot due to diabetes.  While Plaintiff was shopping, she placed her cane in her shopping cart and used the cart to assist with her balance while she walked.  See [43] at 3.  Defendant does not maintain any policies prohibiting its carts from being used in this manner.

After Plaintiff was finished shopping, she pushed her shopping cart into the parking lot and she and her daughter loaded their groceries into their vehicle.  Plaintiff then went to return the cart to the cart corral.  Her cane was in the cart.  Plaintiff testified that as she was returning her cart, one of its wheels became stuck in a crack in the parking lot.  Plaintiff lost her balance and "fell as she pushed the cart from the stopped position and it went out of her hands."  [43] at 3.  "Specifically, when she let go of the cart, she 'had nothing to grab onto' for her balance."  *Id*.  Plaintiff did not trip on the crack or catch her foot in it.  Plaintiff was looking at where she was going at the time of her fall.  Plaintiff did not know the precise size or depth of the crack but testified that it was "kind of deep," deep "[e]nough to get the wheels stuck in it," and "pretty long."  [40-2] at 12.

There were two witnesses to Plaintiff's fall.  Peggy "saw the cart 'fly away' from Plaintiff's hands and Plaintiff falling."  [43] at 4.  Peggy also saw a crack in the parking lot; she did not know its depth or width but testified that it was "on the thinner side."  *Id*. at 5.  Another customer, Barbara Rosenberger, also witnessed Plaintiff fall.  She described the accident as the cart "[getting] away from [Plaintiff], and [Plaintiff] fell down."  *Id.* at 7.

2

Terri Taylor was the Asset Protection Assistant Manager at the Antioch Walmart Store on the date of the accident. At her deposition, Taylor identified the location of Plaintiff's fall based on her review of surveillance video. Taylor estimated that the video was taken from about fifty feet away from where Plaintiff fell. Taylor testified that she could not "say for an absolute fact" whether Plaintiff's cart became stuck in a crack, but stated that from her viewing of the video "[a]ll I saw was the cart roll away from her." [40-4] at 4. Taylor also could not "say for certain one way or the other" whether the condition depicted in a photograph of the parking lot was "enough that it would cause a cartwheel to get stuck." *Id*. at 6. Taylor referred to the crack as an "expansion joint[]" having "no depth"; rather, Taylor testified, the crack was "even with the rest of the asphalt," "filled in," with "no variation in height." [43] at 5. However, Taylor did not take any measurements of the crack and could not recall the parking lot being resurfaced any time between 2012 and Plaintiff's accident in 2017. Taylor also testified that she was not aware of a rule that would prohibit a customer from leaning on a cart for support or any store policies on the proper usage of carts by customers.

David LaForge was the Assistant Manager on duty at the time of Plaintiff's accident. At his deposition, LaForge testified that he recognized the photographs of the parking lot surface as the ones that he and Taylor took immediately after Plaintiff's fall. He also testified that, prior to Plaintiff's fall, he was not aware of any falls in the parking lot or any complaints about cracks or deviations in the parking lot. LaForge referred to the crack as a "flat crack" with "no height differential," [40-6] at 6-7, but also testified that he could not say one way or the other whether any height deviations existed in the crack on the day of the incident and did not know the width of the crack, *id*. at 5. LaForge further testified that he had no basis to dispute Plaintiff's testimony that her cart became stuck in the crack, causing her to lose control of the cart and fall. *Id*. at 3.

There is a surveillance video, taken from approximately fifty feet away, showing Plaintiff's fall. See [40-7]. The video is grainy, but appears to depict a dark, long crack running up the center of one of the parking lot aisles, with cars parked on either side. According to Defendant, the video shows that "Plaintiff falls in the parking lot after her cart rolls out from her control and well after she already passes any crack in the parking lot." [43] at 9. Plaintiff denies Defendant's description of the video and maintains that she fell after her cart became stuck in the crack and she had to push it out. Plaintiff also emphasizes the graininess of the video and that it is taken from approximately fifty feet away.

In her governing complaint, Plaintiff alleges that Walmart acted negligently by causing and allowing its parking lot to contain cracks, crevices, bumps and height deviations; failing to repair these dangerous conditions within a reasonable time; and failing to block or barricade the dangerous conditions or properly warn invitees about them. See [1-1] at 3-4. Currently before the Court is Defendant's motion for summary judgment.

## II.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532-33 (7th Cir. 2013) (citation omitted). It "'may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.'" *Johnson v. Rimmer*, 936 F.3d 695, 705 (7th Cir. 2019) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252.

### III. Analysis

"To prove a defendant's negligence under Illinois law, a plaintiff must establish 'the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach.'" *Hutchison v. Fitzgerald Equipment Co.*, 910 F.3d 1016, 1022 (7th Cir. 2018) (quoting *Buechel v. United States*, 746 F.3d 753, 763–64 (7th Cir.

5

2014)). Defendant moves for summary judgment on the first and third elements, which the Court will discuss in reverse order.

### A. Proximate Cause

Typically, "[t]he proximate cause element is a factual question for the jury to decide." *Stanphill v. Ortberg*, 129 N.E.3d 1167, 1176 (Ill. 2018); see also *Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012) (proximate cause may be found as a matter of law only "'when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them'" (quoting *Merlo v. Pub. Serv. Co. of N. Ill.*, 45 N.E.2d 665, 675 (Ill. 1942)); *Shick v. Illinois Dept. of Human Services*, 307 F.3d 605, 615 (7th Cir. 2002) ("the issue of proximate cause is a jury question" except in "extreme circumstances"). Proximate cause has "two components: cause in fact and legal cause." *Stanphill*, 129 N.E.3d at 1176. The inquiry into "cause in fact" is "whether the injury would have occurred absent the defendant's conduct." *Hakim v. Safariland, LLC*, 410 F. Supp. 3d 862, 873 (N.D. Ill. 2019) (internal citation and quotation mark omitted). "Legal cause" concerns whether the plaintiff's injury was "reasonably foreseeable." *Id*.

Defendant's motion for summary judgment focuses on "cause in fact." Defendant argues that Plaintiff cannot establish proximate cause because "[t]here was no physical condition on the premises that caused Plaintiff to lose her balance." [39] at 3. Instead, Defendant maintains, "Plaintiff's fall happened after she passed the crack when the cart rolled out of her control and she 'had nothing to grab onto.'" *Id*. Defendant cites to portions of Plaintiff's deposition transcript in support of its position. However, Defendant does not take into account Plaintiff's testimony that her cart became stuck in a crack in the parking lot and that in the process of pushing the cart from its stopped position in the crack, she lost her balance, the cart rolled away from her, and she fell.

6

See [43] at 3. Plaintiff also testified that the crack was deep "[e]nough to get the wheels stuck in it." [40-2] at 12. Defendant has not demonstrated as a matter of law that Plaintiff's version of events could not be true. It offers no testimony, photos, or experiments establishing the width of the crack or that the crack was so narrow that it would be impossible for the wheel of a cart to become stuck in it.

Defendant characterizes the surveillance video of its parking lot as showing that Plaintiff fell "well after she already passes any crack in the parking lot." [40] at 5. But the video is too grainy and taken from so far away that it is impossible for the Court to say with any degree of certainty that the wheel of the cart did not become stuck in the crack or that Plaintiff did not lose her balance while trying to push the cart out of the crack. Further, Defendant's Asset Protection Assistant Manager, Ms. Taylor, acknowledged that she could not "say for an absolute fact" if Plaintiff's cart became stuck in a crack, [40-4] at 4, or say for certain whether the crack was wide enough that the wheel of a cart could become stuck in it, [43] at 5. Similarly, Defendant's Assistant Manager, Mr. LaForge, acknowledged that he had no basis to dispute Plaintiff's testimony that her cart became stuck in the crack, which caused her to lose control of the cart and fall. [40-6] at 3. Based on this record, it must be left to a jury to decide whether the crack in Defendant's parking lot proximately caused Plaintiff's fall.

### B. Duty and the *De Minimis* Rule

Defendant's other argument in support of summary judgment is that the crack in its parking lot was a "*de minimis*" condition that it had no duty to guard against. The "*de minimis* rule" was first recognized in the context of municipal liability for "minor defects in sidewalks" and is "rooted in the scope of municipalities' duty to maintain their property in a reasonably safe condition." *Hartung v. Maple Inv. & Dev. Corp.*, 612 N.E.2d 885, 888 (Ill. App. 1993). The rule has since

7

been expanded to cover "private owners and possessors of land." *Id*. at 889. The rule recognizes that landowners are "not required to maintain perfect sidewalks," given (a) the "great burden" this would impose on landowners, especially in a state like Illinois with "extreme and changeable weather conditions"; and (b) that "[i]t is common knowledge that sidewalks are constructed in slabs for the very reason that they must be allowed to expand and contract with changes in temperature." *Id*. at 889-90.

"Under the *de minimis* rule, a jury question on the issue of negligence 'is presented only when the defect in the sidewalk is such that a reasonably prudent man should anticipate some danger to persons walking upon it.'" *Barrett v. FA Group, LLC*, 90 N.E.3d 537, 549 (Ill. App. 2017); see also *Hartung*, 497 N.E.2d at 888; *West v. City of Hoopeston*, 497 N.E.2d 170, 173 (Ill. App. 1986). "Whether a height variance between two sidewalk slabs is *de minimis* depends on all of the pertinent facts, and there is no simple standard to separate *de minimis* defects from actionable ones." *St. Martin v. First Hospitality Group, Inc.*, 9 N.E.3d 1221, 1225 (Ill. App. 2014); see also *Repinski v. Jubilee Oil Co.*, 405 N.E.2d 1383, 1387 (Ill. App. 1980) ("There is no bright line test to determine when a defect is so slight that it becomes a question for the court or should be submitted to the jury, and each case must be determined on its particular facts and circumstances."). Nonetheless, as the rule has developed in Illinois, it has become "well established that, absent any aggravating factors, a vertical displacement of less than two inches" between sidewalk slabs "is *de minimis*" and does not present a jury question. *St. Martin, Inc.*, 9 N.E.3d at 1225. Aggravating factors that may warrant deviation from this standard include the defect being located in a commercial rather than residential area, see *id*. at 126; *Repinski*, 405 N.E.2d at 1387-88 (Ill. App. 1980); where there is poor lighting, see *Cook v. Village of Oak Park*, 145 N.E.3d 600, 603 (Ill. App. 2019); or where pedestrians cannot easily avoid it, such as near the

only means of ingress and egress to a commercial establishment, see *Harris v. Old Kent Bank,* 735 N.E.2d 758, 764-65 (Ill. App. 2000).

Applying the case law to the facts in the summary judgment record, the Court concludes that a jury must be allowed to determine whether the alleged defect in Defendant's parking lot was one that a "reasonably prudent" person should have anticipated would present "some danger to persons walking upon it." *Barrett*, 90 N.E.3d at 549. Therefore, Defendant is not entitled to summary judgment based on the *de minimis* rule. As an initial matter, Defendant has not demonstrated that the *de minimis* rule applies to defects in parking lots, as opposed to sidewalks. Cf. *Cook*, 145 N.E.3d at 603 ("In Illinois, courts apply the *de minimis* rule when evaluating injury claims resulting from deviations in adjoining sidewalk slabs."). All of the cases cited by Defendant involved sidewalks, and none mentions parking lots. See *Hartung*, 612 N.E.2d at 888 (*de minimis* rule applied to pedestrian who tripped over sidewalk that deviated in grade from one half to three quarters of an inch and plead no aggravating circumstances); *St. Martin*, 9 N.E.3d at 1227 (*de minimis* rule applied to pedestrian who tripped over sidewalk outside hotel with height deviation of less than two inches and did not plead or provide evidence of any aggravating circumstances); *Repinski*, 405 N.E.2d at 1388 (jury must be allowed to decide whether city was liable to pedestrian who, while walking on a city sidewalk in a predominately residential area crossing a gasoline station driveway, tripped in a hole that was 1 ½ inches deep and 1 ½ feet in diameter).

It seems logical to extend the general rationale for the *de minimis* rule—that it would be unreasonably burdensome to expect landowners to keep sidewalks in perfect repair, especially in a climate like Illinois' with extreme weather fluctuations—to parking lots. But Defendant has presented no evidence that parking lots, unlike sidewalks, are constructed in slabs with seams that one might expect to expand and contract with the weather. See *St. Martin*, 9 N.E.3d at 1225.

9

Defendant's parking lot, as depicted in the photos and video introduced in the summary judgment record, does not appear to have such seams. Thus, the case law on the *de minimis* rule is not particularly helpful in determining what is "reasonable" for parking lots.

In its own research, the Court found one Illinois case applying the *de minimis* rule to parking lots, *Barrett*, 90 N.E.3d at 547. In that case, the parking lot contained a pothole with a height differential large enough for the plaintiff's two-inch heel to get wedged in between, causing her to jolt forward and fall. *Id*. The court determined that the parking lot owner was not entitled to summary judgment because "Defendants have cited no cases applying the *de minimis* rule to a situation in which the defect in the pavement has left exposed loose debris such that an individual's shoe could become embedded in the debris and cause him to her to fall"; "the pothole as depicted in the photographs [wa]s not small, appearing to be up to several feet long and wide"; and the pothole was "located in an area of the parking lot in which there are no designated parking spaces, making it more likely for a pedestrian to encounter it, especially when walking across a crowded parking lot." *Id*.

Similar to *Barrett*, and unlike cases applying the *de minimis* rule to sidewalks, the height differential of the crack in Defendant's parking lot appears to be of secondary importance to its width and potential to cause someone or something crossing it to become stuck. According to Plaintiff's testimony—which Defendant offers little if anything to contradict—the crack in Defendant's parking lot was wide enough for a shopping cart wheel to become stuck in it. Plaintiff also testified, and the video and photographs show, that the crack was "long," running much of the length of the parking lot aisle between the two rows of parked cars. Given this location, it was reasonably foreseeable that a customer like Plaintiff would roll her cart over the crack while loading merchandise into her vehicle or returning the cart to its corral. Indeed, it appears that it

10

would be difficult for a customer to avoid going over the crack with a shopping cart given the crack's length and prominent location. It also would be reasonable for a jury to take into account include the crack's location in a busy commercial area, where customers need to look out for vehicles and could have their vision restricted by their carts and the often bulky merchandise loaded inside. Under these facts, the Court cannot say that "all reasonable minds would agree" that the crack is "so minor that no danger to pedestrians could reasonably be foreseen." *Repinski*, 405 N.E.2d at 1387. Therefore, Defendant is not entitled to summary judgment based on the *de minimis* rule.

**IV.     Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment [73] is denied. This case is set for telephone status hearing on July 27, 2021 at 9:45 a.m. Participants should use the Court's toll-free, call-in number 877-336-1829, passcode 6963747.

Dated: July 8, 2021

_____
Robert M. Dow, Jr.
United States District Judge